IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

MICHAEL CELENTANO,

*Plaintiff*,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

*Defendant*.

## COMPLAINT

Plaintiff, Michael Celentano ("Mr. Celentano"), by and through his counsel of record, McDermott Law, LLC, for his Complaint against Defendant Life Insurance Company of North America ("LINA") states, alleges, and avers as follows:

### I.   JURISDICTION, VENUE, PARTIES

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et. seq.*

2. Mr. Celentano is a decorated military combat veteran and law enforcement officer, who dutifully served his country for 34 years.

3. At all times pertinent hereto, Mr. Celentano, is and was a resident, citizen, and domiciliary of the State of Colorado.

4. Defendant LINA is a Pennsylvania insurance company, with its principal place of business in Philadelphia, Pennsylvania.

5. LINA is a wholly-owned subsidiary of Connecticut General Corporation, which is a wholly-owned subsidiary of Cigna Holdings, Inc., which is a wholly-owned subsidiary of Cigna

Holding Company, which is a wholly-owned subsidiary of Cigna Corporation, a publicly traded company.

6. LINA is and at all times relevant was registered with the Colorado Division of Insurance to conduct, and does conduct, the business of insurance in the State of Colorado.

7. After Mr. Celentano retired from his distinguished military and law enforcement service, he was employed by non-party Aptim Corp.

8. By virtue of his employment with Aptim Corp., Mr. Celentano was a "participant" in and "beneficiary" of the Aptim Employee Benefit Plan as those terms are defined by 29 U.S.C. § 1002(7) and (8).

9. The Aptim Employee Benefit Plan (the "Plan") is an "employee benefit plan" as that term is defined by 29 U.S.C. § 1002(3).

10. As part of the Plan, employee participants were provided both short-term disability ("STD") and long-term disability ("LTD") income replacement benefits if they became disabled.

11. The Plan's STD benefits were funded by Group Short Term Disability Insurance Policy Number VDT-962637 (the "STD Policy").

12. The Plan's LTD benefits were funded by Group Long Term Disability Insurance Policy Number FLK-961016 (the "LTD Policy").

13. Upon information and belief, LINA is the designated claim administrator for the Plan regarding claims for benefits under both the STD Policy and the LTD Policy.

14. The Court has subject matter jurisdiction over the action under 28 U.S.C. 1331 and 29 U.S.C. §§ 1132(e) and (f).

15. This Court has personal jurisdiction over the Defendant.

16. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(a) & (b) and 29 U.S.C. § 1132(e)(2).

## I.   GENERAL ALLEGATIONS

**A.   <u>The STD Policy</u>**

17.   Under the STD Policy, LINA promised that if Mr. Celentano became Disabled while the Policy was in effect, LINA would pay 60% of his weekly Covered Earnings rounded to the nearest dollar or $3000 per week (whichever was less).

18.   Under the STD Policy, LINA chose to define "Disabled" as follows:

> You are considered Disabled if, solely because of Injury or Sickness, you are:
>
> 1.   unable to perform the material duties of your Regular Job; and
>
> 2.   unable to earn 80% or more of your Covered Earnings from working in your Regular Job.
>
> We will require proof of earnings and continued Disability.

19.   Under the STD Policy, LINA chose to define "Covered Earnings" as follows:

> Your wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date your Disability begins. Covered Earnings are determined initially on the date an Employee applies for coverage. A change in the amount of Covered Earnings is effective on January 1 coinciding with or next following the change, if the Employer gives us written notice of the change and the required premium is paid.
>
> It does not include any amounts received as bonus, commissions, overtime pay or other extra compensation.
>
> Any increase in your Covered Earning will not be effective during a period of continuous Disability.

**B.   <u>The LTD Policy</u>**

20.   Under the LTD Policy, LINA promised that if Mr. Celentano became Disabled while the Policy was in effect, LINA would pay 60% of Mr. Celentano's monthly Covered Earnings rounded to the nearest dollar, or $5000 per month (whichever was less).

21. Under the LTD Policy, LINA chose to define "Disabled" as follows:

> You are considered Disabled if, solely because of Injury or Sickness, you are:
>
> 1. unable to perform the material duties of your Regular Job; and
>
> 2. unable to earn 80% or more of your Indexed Earnings from working in your Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, you are considered Disabled if, solely due to Injury or Sickness, you are:
>
> 1. unable to perform the material duties of any occupation for which you are, or may reasonably become, qualified based on education, training or experience; and
>
> 2. unable to earn 80% or more of your Indexed Earnings.

22. Under the LTD Policy, LINA chose to define "Covered Earnings" as follows:

> Your wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date your Disability begins. Covered Earnings are determined initially on the date an Employee applies for coverage. A change in the amount of Covered Earnings is effective on January 1 coinciding with or following the change the change [sic], if the Employer gives us written notice of the change and the required premium is paid.
>
> It does not include any amounts received as bonus, commissions, overtime pay or other extra compensation.
>
> Any increase in your Covered Earning will not be effective during a period of continuous Disability.

23. Under the LTD Policy, LINA chose to define "Indexed Earnings" as follows:

> For the first 12 Months Monthly Benefits are payable, your Indexed Earnings are equal to your Covered Earnings. After 12 Monthly Benefits are payable, your Indexed Earnings are your Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
>
> 1. 10% of your Indexed Earnings during your preceding year of Disability; or
>
> 2. the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

C. **Cigna's Approval of Mr. Celentano's claim for STD and LTD Benefits.**

24.    Mr. Celentano stopped working for Aptim due to an injury and applied for STD benefits.

25.    LINA approved Mr. Celentano's claim for STD benefits. In doing so, LINA determined that the amount of Mr. Celentano's "Covered Earnings" entitled him to a weekly STD benefit of $1066.00 (approximately $4,619.33 per month) and it paid him that amount in STD benefits for the duration of the STD Policy term.

26.    When the STD Policy term expired (and the LTD Policy's 180-day elimination period had been satisfied), LINA transitioned Mr. Celentano's claim from the STD department to its LTD department.

27.    Like the STD department, LINA's LTD department concluded that Mr. Celentano remained disabled under the terms of the LTD Policy, and it approved his claim for LTD benefits.

28.    However, LINA's LTD department determined that Mr. Celentano's LTD benefit was just $2,638.00 per month, even though both the STD and LTD Policies contain functionally identical definitions of the amounts LINA is supposed to pay under either Policy.

29.    After learning that LINA's LTD department approved his claim for nearly half of what the STD department paid him, Mr. Celentano repeatedly raised concerns with LINA through phone calls and emails during which he explained that LINA was underpaying him on his LTD benefit.

30.    LINA refused to adjust Mr. Celentano's LTD benefit to match what he was receiving as his STD benefit

31.    LINA never informed Mr. Celentano of his right or obligation to submit an internal appeal contesting LINA's calculation of his LTD benefits.

32.    Because LINA refused to adjust Mr. Celentano's LTD benefit, he was forced to hire attorneys to assist him in getting LINA to pay the full benefits due under the LTD Policy.

33. After Mr. Celentano hired counsel, by letter dated July 22, 2020, he requested (through counsel) copies of his claim file and other relevant documents and information.

34. When LINA received Mr. Celentano's letter dated July 22, 2020, LINA knew ERISA regulations required it to respond and provide relevant documents and information within 30 days.

35. When LINA received Mr. Celentano's letter dated July 22, 2020, it knew that if it did not respond within 30 days, it could be subject to a penalty of up to $100 per day (since adjusted for inflation). However, LINA did not respond to Mr. Celentano's request within 30 days, nor did it provide any relevant documents or information requested within 30 days.

36. By letters dated August 25, 2020, and September 9, 2020, Mr. Celentano, through counsel, submitted follow-up letters to LINA, asking that it respond to his requests for relevant documents and information and to explain the bases for its delay.

37. By email on September 11, 2020, LINA finally responded, purporting to provide the documents and information requested by Mr. Celentano on July 22, 2020; however, LINA's production failed to provide a response to much of what was requested.

38. By letter dated September 30, 2020, Mr. Celentano, through counsel, submitted an appeal to LINA regarding its miscalculation of his LTD benefits. In doing so, Mr. Celentano requested LINA to provide additional documents and information that were still outstanding from the request he made by letter dated July 22, 2020.

39. LINA received Mr. Celentano's appeal by fax on September 30, 2020, and by US Certified Mail on October 12, 2020.

40. When LINA received Mr. Celentano's appeal, it knew that ERISA and applicable regulations required it to render an appeal decision within 45 days.

41. When LINA received Mr. Celentano's appeal, it knew that ERISA and applicable regulations provided that if it did not render an appeal decision within 45 days, Mr. Celentano's would

6

be deemed to have exhausted the administrative remedies available under the Plan and would be entitled to pursue any available remedies under ERISA § 502(a) on the basis that LINA had failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

42. As of the filing of this Complaint, LINA has never responded to Mr. Celentano's appeal dated September 30, 2020; nor has LINA ever requested an extension of time to decide Mr. Celentano's appeal.

43. By letter dated December 3, 2020, Mr. Celentano, through counsel, informed LINA that its decision was late, that its failure to render a timely decision was causing Mr. Celentano additional harm, and that it was denying him a full and fair review of his claim.

44. As of the filing of this Complaint, LINA has never responded to Mr. Celentano's letter dated December 3, 2020.

45. Throughout the acts and omissions described in this Complaint, LINA was responsible for investigating and evaluating claims for benefits and appeals.

46. When deciding Mr. Celentano's claim and appeal requests, LINA knew it was required to ensure all benefit determinations under the LTD Policy were reasonable and based on the terms of the Plan and the LTD Policy and the facts and circumstances of each claim.

47. LINA, as the insurer and underwriter of the LTD Policy, is solely liable for the payment of benefits on all approved claims and, if a claim is approved, LINA must pay those benefits from its own funds.

48. By virtue of LINA's failure to timely decide Mr. Celentano's appeal, the required internal appeal process is deemed exhausted and he is entitled to seek the relief requested in this Complaint.

49. Since originally filing his claim for LTD benefits, Mr. Celentano has been and remains disabled as a result of Injury or Sickness as the LTD Policy define those terms.

50. Mr. Celentano has satisfied all conditions precedent to receiving LTD benefits under the LTD Policy.

51. Under the LTD Policy Mr. Celentano is entitled to LTD benefits in the amount of $4619.00 per month, retroactive to April 1, 2020, and into the future.

**D.    LINA's Adverse Decisions Are Not Entitled to Deference**

52. LINA's reduction of Mr. Celentano's LTD benefits was not substantially justified, was arbitrary and capricious, was unsupported by substantial evidence, constitutes abuses of any discretion allowed, and was wrongful under the circumstances.

53. In reducing Mr. Celentano's LTD benefits and failing to make a timely decision regarding his internal appeal, LINA breached the fiduciary duties that it owes to him.

54. LINA's reduction of Mr. Celentano's LTD benefits is contrary to the preponderance of the evidence in the file, including the information provided to LINA by Mr. Celentano's employer and the decision of LINA's STD department.

55. LINA's failure to perform a full and fair review of Mr. Celentano's claim was the result of a conflicted claim process and is therefore entitled to no deference.

**E.    LINA's Pattern and Practice of Violating the ERISA Regulations and Terms of the Plan**

56. ERISA regulations required LINA to notify Mr. Celentano of its internal appeal decision within 45 days of receiving his request for review.

57. LINA did not notify Mr. Celentano of its internal appeal decision within 45 days of receiving his request for review.

58. In failing to notify Mr. Celentano of its internal appeal decision within 45 days of receiving Mr. Celentano's request, LINA knew it was violating ERISA regulations.

59. ERISA regulations required LINA to provide Mr. Celentano with any new or additional evidence considered, relied upon, or generated by the Plan, LINA or other person deciding his internal appeal.

60. LINA never provided Mr. Celentano with any new or additional evidence considered, relied upon, or generated during its review of his internal appeal.

61. In failing to provide Mr. Celentano with any new or additional evidence considered, relied upon, or generated during its review of his appeal, LINA knew it was violating ERISA regulations.

62. ERISA regulations permit LINA to take longer than 45 days to decide an appeal only when "special circumstances" exist, such as the need for a hearing, and prevent a decision from being rendered within the initial 45-day period.

63. If "special circumstances" required LINA to request an extension to decide Mr. Celentano's appeal, ERISA regulations required LINA to make that request within 45 days of receiving his appeal.

64. LINA never requested additional time to decide Mr. Celentano's appeal.

65. In not requesting an extension of time to decide Mr. Celentano's appeal, LINA knew it was violating ERISA regulations.

66. LINA has identified no "special circumstances" that would warrant a request for additional time to decide Mr. Celentano's appeal.

67. In failing to identify any "special circumstances" that would warrant a request for additional time to decide Mr. Celentano's appeal, LINA knew it was violating ERISA when it took more than 45 days to decide his appeal.

68. No special circumstances exist that would justify LINA's failure to decide Mr. Celentano's appeal within 45 days of receiving it.

9

69. Upon information and belief, the majority of LINA's decisions on internal appeals submitted by insureds are not rendered within 45 days of receiving the appeal.

70. Upon information and belief, the majority of LINA's review of internal appeals do not involve "special circumstances" that would justify LINA requesting more than 45 days to decide.

71. LINA's pattern and practice of not rendering timely appeal decisions is due in part to a defective claim and internal appeal process or is intentional.

## II.   FIRST CLAIM FOR RELIEF
### (Claim for Relief Under ERISA § 502(a)(1)(B) and 29 USC § 1132(a)(1)(B))

72. Mr. Celentano incorporates herein all paragraphs contained in this Complaint.

73. Under ERISA Section 502(a)(1)(b), 29 U.S.C. § 1132 (a)(1)(b), Mr. Celentano is permitted to bring a civil action to recover benefits due under the LTD Policy and Plan, to enforce his rights under the Policy and Plan, and/or to clarify his right to future benefits under the Policy and Plan.

74. The evidence presented to LINA establishes that Mr. Celentano has been continuously disabled under the terms of the LTD Policy from the date benefits began through present.

75. At all relevant times, Mr. Celentano is and has been entitled to LTD benefits under the Plan and Policy.

76. In approving Mr. Celentano's LTD benefit for just $2,638.00, LINA knew it was ignoring and/or unreasonably discrediting information supporting Mr. Celentano's entitlement to LTD benefits in the amount of $4,619.00 per month under the LTD Policy.

77. By the acts and omissions described herein, and through others likely to be uncovered through discovery, Defendant breached the terms of the LTD Policy.

78. As a direct and proximate result of LINA's breaches of the LTD Policy, Mr. Celentano has been denied benefits due to him under the LTD Policy since LINA approved them effective April 1, 2020.

79. Mr. Celentano brings this action under 29 U.S.C. § 1132(a)(1)(B) to recover past-due LTD benefits (with interest) retroactive to April 1, 2020 (the date LINA began paying his LTD benefit at the reduced rate.

80. Mr. Celentano brings this action under 29 U.S.C. § 1132(a)(1)(B) to enforce his right to $4619.00 per month in LTD benefits (plus interest) dating back to April 1, 2020 (the date LINA began paying his LTD benefit at the reduced rate) and into the future.

81. Mr. Celentano brings this action under 29 U.S.C. § 1132(a)(1)(B) to obtain clarification of his rights to future LTD benefits, given LINA's clear repudiation of the LTD Policy.

### III.   SECOND CLAIM FOR RELIEF
### (Claim to Enjoin LINA Under ERISA § 502(a)(3) and 29 USC § 1132(a)(3))

82. Mr. Celentano incorporates herein all paragraphs contained in this Complaint.

83. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Mr. Celentano may bring a civil action to enjoin any act or practice that violates ERISA or the terms of the Plan.

84. Mr. Celentano brings this claim to enjoin LINA from its pattern and practice of violating ERISA by failing to render internal appeal decisions within 45 days of receiving appeals from claimants, including Mr. Celentano.

85. Mr. Celentano brings this claim to enjoin LINA from its pattern and practice of violating ERISA by failing to provide claimants, including Mr. Celentano, relevant documents and information within 30 days of receiving such a request.

86. Mr. Celentano brings this claim to enjoin LINA from its pattern and practice of violating ERISA by withholding from claimants, including Mr. Celentano, relevant documents and information.

87. Mr. Celentano brings this claim to enjoin LINA from violating the terms of the Plan and the LTD Policy by reducing his monthly LTD benefits to less than the amount LINA owes him under the LTD Policy and the Plan.

11

## IV.     THIRD CLAIM FOR RELIEF
### (Claim for Equitable Relief Under ERISA § 502(a)(3) and 29 USC § 1132(a)(3))

88.     Mr. Celentano incorporates herein all paragraphs contained in this Complaint.

89.     Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Mr. Celentano may bring a civil action to obtain other appropriate equitable relief to redress LINA's violations of ERISA and the Policy, or to enforce any provision of ERISA or the terms of the Policy.

90.     By repeatedly violating multiple provisions of ERISA and the terms of the Policy, LINA knew or should have known it could cause irreparable financial harm to Mr. Celentano.

91.     LINA is a fiduciary of the Plan for purposes of ERISA Section 402(a)(1) with authority to control and manage the operation and the administration of the Plan and LTD Policy.

92.     By delaying payment of the full amount of the LTD benefit, while simultaneously earning substantial interest and/or return on equity from the unpaid benefits, LINA placed its financial interests ahead of Mr. Celentano's and received financial benefits at his expense.

93.     By the acts and omissions described throughout this Complaint, and others likely to be learned through discovery, LINA has clearly and unequivocally expressed its intent to not perform its contractual obligation to pay Mr. Celentano LTD benefits for the full amount owed under the LTD Policy (i.e., LINA has repudiated the LTD Policy).

94.     By the acts and omissions described throughout this Complaint, and others likely to be learned through discovery, LINA forced Mr. Celentano to incur significant attorneys' fees.

95.     By the acts and omissions described throughout this Complaint, and others likely to be learned through discovery, LINA denied Mr. Celentano of a full and fair review of his appeal.

96.     As a Plan fiduciary, LINA owes Mr. Celentano an equitable duty to remedy and compensate him for the losses it caused him to suffer when it breached its fiduciary obligations.

97. Under 29 U.S.C. § 1132(a)(3), Mr. Celentano is entitled to equitable relief for the separate and distinct harms he suffered from LINA's violations of ERISA, the LTD Policy, and the Plan, as well as its pattern and practice of violating ERISA and its related regulations.

98. Such equitable relief includes the following, which Mr. Celentano seeks to recover under this claim:

   a. Acceleration—an action advancing the breaching party's obligations under a contract—is an equitable remedy available under 29 U.S.C. § 1132(a)(3)

   b. Accounting for profits—an action for equitable relief against a person in a fiduciary relationship to recover profits taken in a breach of the relationship—is an equitable remedy available under 29 U.S.C. § 1132(a)(3);

   c. Disgorgement—an action seeking to have the court compel LINA to return improperly gained profits—is an equitable remedy available under 29 U.S.C. § 1132(a)(3);

   d. Restitution—an action seeking an award of damages against a defendant that has been unjustly enriched at the Plaintiff's expense—is an equitable remedy available under 29 U.S.C. § 1132(a)(3); and

   e. Surcharge—an award of money damages imposed on a fiduciary for breach of duty—is an equitable remedy available under 29 U.S.C. § 1132(a)(3).

## V. FOURTH CLAIM FOR RELIEF
### (Claim for Relief Under 29 USC § 1132(g))

99. Mr. Celentano incorporates herein all paragraphs contained in this Complaint.

100. Mr. Celentano also seeks to recover all awardable interest, attorneys' fees, and costs under 29 U.S.C. § 1132(g).

## VI. FIFTH CLAIM FOR RELIEF
### (Claim for Penalties Under ERISA § 502(c))

101. Mr. Celentano incorporates herein all paragraphs contained in this Complaint.

102.  Pursuant to ERISA § 502(c), 29 USC § 1132(c), documents required to be disclosed under Title I of ERISA must be furnished within 30 days after the request is received.

103.  If an administrator fails to provide any documents required to be disclosed under Title I of ERISA within 30 days, the administrator can be held personally liable for failure or refusal to comply with ERISA and courts may impose a penalty of up to $100 per day (since adjusted for inflation) that the documents are withheld beyond 30 days.

104.  Based on the acts and omissions discussed throughout this Complaint (and others likely to be uncovered through discovery), LINA failed to timely provide all documents required to be disclosed under Title I of ERISA.

105.  LINA's failure to provide all documents required to be disclosed under Title I of ERISA prejudiced Mr. Celentano's ability to perfect his appeal and have LINA reinstate his benefits at the proper amount.

106.  As a result, Mr. Celentano seeks an award of penalties in his favor and against LINA under ERISA § 502(c), 29 U.S.C. § 1132(c).

**WHEREFORE**, Plaintiff, Michael Celentano, requests the Court to enter judgment in his favor and against Defendant, LINA, as follows:

a) Declare that Plaintiff is entitled to LTD benefits under the Plan and the LTD Policy in the amount of $4619.00 per month;

b) Order LINA to pay Mr. Celentano all past-due benefits under the Policy from the date they became due through the life of the policy, together with interest (both statutory and moratory) on each monthly payment from the date it became due through the date of judgment;

c) Order LINA to pay Mr. Celentano the costs of the suit herein, including reasonable attorneys' fees, under ERISA Section 502(g)(1), 29 U.S.C. § 1132(g);

 d) Order LINA to pay penalties to Mr. Celentano pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c);

 e) Enjoin LINA from violating ERISA, the Plan, and the LTD Policy pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and

 f) Provide such other and further equitable relief as this Court deems just and proper under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including without limitation the equitable remedies of acceleration, accounting for profits, disgorgement, restitution, and/or surcharge in amounts to be proven at trial.

Respectfully submitted this 16th day of December 2020, by:

            MCDERMOTT LAW, LLC

            *s/ Timothy M. Garvey*
            Shawn E. McDermott, #21965
            Timothy M. Garvey, #42668
            4600 S. Ulster Street, Suite 800
            Denver, CO 80237
            (303) 964-1800
            (303) 964-1900 (fax)
            *shawn@mcdermottlaw.net*
            *tim@mcdermottlaw.net*

Plaintiff's Address:
2571 Greenhorn View Dr.
Pueblo West, CO 81007